DAVID M. ROSENBERG-WOHL (Cal. Bar No. 132924)
HERSHENSON ROSENBERG-WOHL,
A PROFESSIONAL CORPORATION
315 Montgomery St., 8th Fl.
San Francisco, CA 94104
(415) 829-4330
david@hrw-law.com

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACKIE TABAS AND KATHERINE ROSENBERG-WOHL, ON BEHALF OF THEMSLEVES AND ALL OTHERS SIMILARLY SITUATED,<br><br>Plaintiff,<br><br>vs.<br><br>MOVIEPASS, INC., HELIOS AND MATHESON ANALYTICS INC., TED FARNSWORTH, STUART BENSON, MITCH LOWE, AND DOES 1-10,<br><br>Defendants. | Case No. 3:18-cv-7087<br><br>**COMPLAINT [CLASS ACTION]** |

1. Plaintiffs, Jackie Tabas and Katherine Rosenberg-Wohl, on behalf of themselves and all others similarly situated ("Plaintiffs"), by and through the undersigned counsel, bring this Complaint against Defendants MoviePass, Inc. ("MOVIEPASS"), Helios and Matheson

COMPLAINT [CLASS ACTION] - 1

Analytics Inc. ("HMNY"), Ted Farnsworth ("FARNSWORTH"), Stuart Benson ("BENSON"), Mitch Lowe ("LOWE"), and Does 1-10 (together, "Defendants") for damages, restitution, declaratory and injunctive relief, and in support thereof state as follows:

**JURISDITION AND VENUE**

2. This court has federal jurisdiction pursuant to 28 U.S.C. § 1331 under RICO (12th Claim for Relief). This Court also has federal diversity jurisdiction pursuant to 28 U.S.C. § 1332 because the citizenship of the parties is completely diverse and the amount in controversy exceeds $75,000. Plaintiffs are citizens of California. Defendants are corporate citizens of New York incorporated in Delaware and individuals, who, on information and belief, live in New York. This Court has supplemental jurisdiction over the balance of the claims asserted herein under 28 U.S.C. § 1367.

3. Defendants are subject to personal jurisdiction throughout California pursuant to 28 U.S.C. §§ 1391(b)(2) and (3) because they enter into contracts with consumers such as Plaintiffs who reside there or cause their business entities to do so.

4. Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c) because Defendants seek to do and do business in this county/District, Defendants have transacted business with Plaintiffs in this county/District, and Defendants are subject to personal jurisdiction in this county/District. *See* Exhibit 1.

///

///

///

**FACTUAL ALLEGATIONS**

COMPLAINT [CLASS ACTION] - 2

MOVIEPASS: the Dream, the Financial Reality, and HMNY's "Bet the Company" Mistake

5. MOVIEPASS is a company, as its name implies, that sells consumers subscriptions to go out to see movies in movie theaters. For a subscription, a consumer pays MOVIEPASS a monthly fee, for which she gains access to the movies in showing in movie theaters, nationwide. Using an app that the consumer downloads to his or her phone, the consumer identifies the movies playing in the area, selects a movie of choice at a showtime of choice, goes to the theater and uses the MOVIEPASS card as a debit card, transferring payment for the movie selected from MOVIEPASS to the theater.

6. LOWE is the CEO of MOVIEPASS and Stacy Spikes is Co-Chairman. LOWE is the person responsible for day to day decision-making involving MOVIEPASS and interacting with MOVIEPASS' corporate parent, HMNY.

7. From its start in 2011, MOVIEPASS has struggled to find its proper model, both in terms of what it offers and its price. As it grew in size, MOVIEPASS tried several pricing structures, from 2-3 films/month, to "unlimited" plans with pricing based on market size. In December 2016, the service had 20,000 subscribers.

8. On August 15, 2017, a majority interest in MOVIEPASS was purchased by the data analytics firm Helios and Matheson Analytics Inc. ("HMNY"). MOVIEPASS had a growing customer database. HMNY had money. The prize sought by HMNY's investment was the moviegoing habit data of MOVIEPASS customers. HMNY wanted to sell this data. HMNY subsequently doubled down on its bet, increasing its ownership of MOVIEPASS to 91.8% and initiating a merger of MOVIEPASS into HMNY.

COMPLAINT [CLASS ACTION] - 3

9. The cash infusion allowed MOVIEPASS growth to explode. Following HMNY's investment in August 2017, MOVIEPASS membership shot up from the 20,000 subscribers of December 2016 to 400,000 in September, 2017. The number was 600,000 in October, 2017, 1 million in December, 2017 2 million in February, 2018 and 3 million in June 2018.

10. To fund this growth, HMNY has mortgaged its future. While MOVIEPASS membership continues to increase, the company has struggled to find a model that allows it to be profitable. MOVIEPASS survives on HMNY cash, and HMNY has increasingly bet its company on the ultimate profitability of MOVIEPASS data. The net income of HMNY in 2017 was $151M. In April 2018 HMNY sold $150M in stock. A considerable portion of the proceeds went to fund MOVIEPASS. In May 2018, HMNY lost $40M. In July, HMNY filed to raise another $1.2B to keep MOVIEPASS alive. In August, HMNY reported a loss of $100M in the second quarter.

11. In August, 2018, investors brought a class action lawsuit in the Southern District of New York against HMNY, FARNSWORTH and BENSON. October, 2018 the Attorney General's office in New York opened an investigation into how the company had been communicating about its financial situation with its investors. Late that month, HMNY announced its intention to spin off MOVIEPASS in an attempt to insulate HMNY from the MOVIEPASS investment. As of November 16, 2018, HMNY stock was selling on NASDAQ at just over a penny a share.

The Basis for the Lawsuit

12. Innovation is risky: investors risk losing everything in the calculated hope of a big payout. Investors know the risks. But consumers are not investors. They part with a small

COMPLAINT [CLASS ACTION] - 4

amount of money for a promised good or service. They trust in the good will of their contracting partners. Their contracts are to be honored, even when the company from which they bought a service struggles financially. If anyone is to lose money, it is the company owners and investors – shareholders big and small. These are the individuals and entities that stood to gain considerably if their bet paid off.

13. Here, HMNY continually took steps to protect itself at the expense of MOVIEPASS subscribers. From the time it acquired majority ownership of MOVIEPASS, HMNY instructed MOVIEPASS to make promises too vague to be enforceable contracts, and breached promises it was obliged to honor. It viewed the MOVIEPASS customer base as data, not people. Its focus was upon increasing the database, not keeping its financial commitments to MOVIEPASS customers. MOVIEPASS customers were not the only victims here: HMNY, FARNSWORTH, BENSON AND LOWE operated an association in fact to manage a criminal enterprise within the otherwise legitimate businesses of MOVIEPASS and HMNY (alternatively, by taking over the previously legitimate business of MOVIEPASS itself), demanding that MOVIEPASS effectuate its breaches of contract and fraud by email communication with its customers. FARNSWORTH and BENSON, due to their respective responsibilities as CEO and CFO of HMNY, necessarily generated and carried out this activity through LOWE, CEO of their subsidiary. For example:

14. HMNY directed MOVIEPASS to break, and MOVIEPASS broke, MP's monthly contracts with consumers at least as of mid-July, 2018, removing most desirable movies and rendering the contracts worthless, all the while representing that these actions were consistent with MP's contractual commitments and simply designed to enhance them.

COMPLAINT [CLASS ACTION] - 5

15. As of 8/24/18, HMNY directed MOVIEPASS to cancel, and MOVIEPASS cancelled, the one-year subscription plan and took from consumers the financial value of the remaining months on these contracts, because (1) they truncated service for remainder of the year; and (2) while they may have offered certain consumers a refund for the remainder, (a) they gave only one week to accept, and (b) if a consumer were to opt out, the consumer was precluded from signing up even for the monthly service for 9 months. Also, HMNY directed MOVIEPASS not to provide, and MOVIEPASS did not provide, a refund – whether promptly, easily, or at all -- when asked. Also, HMNY directed MOVIEPASS not to provide, and MOVIEPASS did not provide, access for consumers -- even truncated access -- for the remainder of the year for which consumers had paid.

16. HMNY directed MOVIEPASS to offer, and MOVIEPASS offered, monthly subscriptions which were too vague to be enforceable contracts, while nonetheless taking consumers' money for these subscriptions.

17. HMNY directed MOVIEPASS to offer, and MOVIEPASS offered, monthly subscriptions which offered consumers the choice of movies they wanted to see, all the while knowing this was not likely to be true and continually pulling specific movies and theaters from the list of availability.

18. Simultaneously with its fraud and breach of contract, HMNY made it virtually impossible for consumers to resolve any concerns. HMNY itself was nonexistent on MOVIEPASS websites. HMNY directed MOVIEPASS to offer customer service in name, but in fact responses to email inquiries would consist of boilerplate language. MOVIEPASS, at the direction of HMNY, continually changed its language and removed the prior versions of terms and conditions from the MOVIEPASS website, making it impossible for

COMPLAINT [CLASS ACTION] - 6

consumers to know the terms that actually applied when they signed up. Originally not offering arbitration as a way of resolving disputes, once it did so, even if a consumer wished to arbitrate a dispute, HMNY made sure that it was never clear just where a consumer was to submit this request and what the consumer was supposed to do to commence arbitration. And when consumers did submit a request to arbitrate with MOVIEPASS, HMNY made sure that MOVIEPASS met those requests with silence.

Plaintiffs

19. Jackie Tabas ("TABAS") is a consumer who has been, and is presently, a MOVIEPASS subscriber. She signed up for monthly membership on 11/20/17, paying $9.95/month. She pays a certain amount each month in exchange for the offer from MOVIEPASS to make available a certain number of movies that she wants to see. TABAS has had increasing difficulty finding movies that she wishes to see available on the MOVIEPASS app.

20. Katherine Rosenberg-Wohl ("ROSENBERG-WOHL") is a consumer who signed up for the MOVIEPASS one-year subscription plan at $89.95 on 11/17/17. She pays a certain amount on an annual basis in exchange for the offer from MOVIEPASS to make available a certain number of movies that she wants to see. ROSENBERG-WOHL had increasing difficulty finding movies that she wished to see available on the MOVIEPASS app. She canceled it on 8/3/18. MOVIEPASS told ROSENBERG-WOHL that upon canceling her plan, she would not receive a refund but would remain able to access her plan through the end of the term for which she had paid. That was not true, and MOVIEPASS knew it. ROSENBERG-WOHL has been unable to access her plan repeatedly during this time period. Any complaint she made remained unaddressed.

COMPLAINT [CLASS ACTION] - 7

**CLASS ACTION ALLEGATIONS**

21. **Class definition**.

    a. Consumers who have purchased monthly subscriptions but have not been able to find the promised number of movies they want to see.

    b. Consumers who have purchased monthly subscriptions but have not been able to find a reasonable number of movies they want to see for the price paid.

    c. Consumers who have purchased annual subscriptions but have not been able to find movies they want to see.

    d. Consumers who have purchased annual subscriptions but have not been able to find a reasonable number of movies for the price paid.

    e. Consumers who have canceled subscriptions but have not been able to use their membership for the remainder of the term.

    f. Consumers who have canceled subscriptions but have not been able to obtain a refund.

    g. Consumers who have found that their cards do not work even though a movie is available at a specific theater.

    h. The foregoing classes are national in scope. Subclasses exist for California consumers.

22. Numerosity. There are so many potential class members that individual joinder of class members is impractical.

23. Commonality. There are questions of law or fact common to class members.

24. Typicality. Claims of Plaintiffs as class representative are typical of those of absent class members.

COMPLAINT [CLASS ACTION] - 8

25. Adequacy of representation. Class counsel and Plaintiffs intend to fairly and adequately protect the interests of absent class members. Plaintiffs also anticipate adding named class members before seeking certification.

**FIRST CLAIM FOR RELIEF**

**(Breach of Contract) [MOVIEPASS]**

26. Plaintiffs incorporate by reference and hereby re-allege the allegations of paragraphs 1-25 of this Complaint as if fully set forth herein.

27. MOVIEPASS has breached Plaintiffs' contracts by failing to honor their terms and frustrating their purpose.

**SECOND CLAIM FOR RELIEF**

**(Breach of Contract) [MOVIEPASS]**

28. Plaintiffs incorporate by reference and hereby re-allege the allegations of paragraphs 1-27 of this Complaint as if fully set forth herein.

29. MOVIEPASS has breached Plaintiffs' contracts by violating the terms of good faith and fair dealing implied by fact and law in each of these contracts.

**THIRD CLAIM FOR RELIEF**

**(Breach of Contract) [MOVIEPASS]**

30. Plaintiffs incorporate by reference and hereby re-allege the allegations of paragraphs 1-29 of this Complaint as if fully set forth herein.

31. MOVIEPASS has breached Plaintiffs' contracts by retaining the financial benefits provided to MOVIEPASS by Plaintiffs while refusing either a refund or continued access to the service.

**FOURTH CLAIM FOR RELIEF [MOVIEPASS]**

**(Continuous Service Offer, Cal. Bus. & Prof. Code § 17602(a)(1))**

32. Plaintiffs incorporate by reference and hereby re-allege the allegations of paragraphs 1-31 of this Complaint as if fully set forth herein.

33. MOVIEPASS failed to disclose the terms of the continuous service offer, including the minimum purchase obligation, recurring charge, continuation until cancellation, length of term and cancellation policy. It did not.

34. MOVIEPASS should have disclosed the above identified terms in a clear and conspicuous manner, in a way that could be appreciated before the offer was fulfilled, and in visual proximity to its request for a consumer's consent. It did not.

35. As a result of MOVIEPASS' conduct, Plaintiffs have paid for a product they did not seek out, did not agree to, and have never been given adequate opportunity to cancel.

**FIFTH CLAIM FOR RELIEF [MOVIEPASS]**

**(Auto-Renewal Offer, Cal. Bus. & Prof. Code § 17602)**

36. Plaintiffs incorporate by reference and hereby re-allege the allegations of paragraphs 1-35 of this Complaint as if fully set forth herein.

37. Before the time a consumer renews a MOVIEPASS subscription, MOVIEPASS should disclose the terms of the auto-renewal offer, including the minimum purchase obligation, recurring charge, continuation until cancellation, length of term and cancellation policy. It has not.

38. MOVIEPASS should have disclosed the above-identified terms in a clear and conspicuous manner, in a way that could be appreciated before the offer was fulfilled, and in visual proximity to its request for a consumer's consent. It has not.

39. MOVIEPASS is prohibited from charging the consumer's credit card for auto-renewal without obtaining that consumer's affirmative consent. It has not.

40. MOVIEPASS is required to provide an acknowledgement of the auto-renewal terms, the cancellation policy, and the cancellation information in a form easily retainable. It has not.

41. MOVIEPASS is required to provide an acknowledgement of the auto-renewal terms, the cancellation policy, and the cancellation information in a form easily retainable. It has not.

42. The cancellation information to be provided should include a number/email/address or other easy mechanism described clearly. If the mechanism for obtaining MOVIEPASS is online, as it was in every case here, the mechanism for cancellation must be on-line. MOVIEPASS has not complied.

43. As a result of MOVIEPASS' conduct, Plaintiffs have paid for a product they did not seek out, did not agree to, and have never been given adequate opportunity to cancel.

**SIXTH CLAIM FOR RELIEF [MOVIEPASS]**

**(*Quantum Meruit*)**

44. Plaintiffs incorporate by reference and hereby re-allege the allegations of paragraphs 1-43 of this Complaint as if fully set forth herein.

45. None of the subscriptions entered into were contracts because the content/inventory was exclusively controlled by MOVIEPASS. As a result, Plaintiffs paid far more than the benefit they received, and MOVIEPASS has retained Plaintiffs' money.

**SEVENTH CLAIM FOR RELIEF [MOVIEPASS]**

**(Unjust Enrichment)**

COMPLAINT [CLASS ACTION] - 11

46. Plaintiffs incorporate by reference and hereby re-allege the allegations of paragraphs 1-45 of this Complaint as if fully set forth herein.

47. Under all of the subscriptions, Plaintiffs paid far more than the benefit they received, and MOVIEPASS has retained Plaintiffs' money.

**EIGHTH CLAIM FOR RELIEF [MOVIE PASS]**

**(CLRA) (CA plaintiffs only)**

48. Plaintiffs incorporate by reference and hereby re-allege the allegations of paragraphs 1-47 of this Complaint as if fully set forth herein.

49. This conduct is in violation, *inter alia*, of California Civil Code sections: CLRA §§ 1770(a)(6) – "[a]dvertising goods or services with intent not to sell them as advertised;" (7) – "[a]dvertising goods or services with intent not to supply reasonably expectable demand, unless the advertisement discloses a limitation of quantity;" (10) – "[m]aking false or misleading statements concerning reasons for price reductions;" and (12) – "[r]epresenting that the subject of a transaction has been supplied in accordance with a previous representation when it has not."

50. Notice was sent by Plaintiffs under CLRA § 1782(a)(2) offering Defendants the chance to correct, replace or otherwise rectify the goods/services described above. *See* Exhibit 2.

**NINTH CLAIM FOR RELIEF [MOVIE PASS]**

**(FAL) (CA plaintiffs only)**

51. Plaintiffs incorporate by reference and hereby re-allege the allegations of paragraphs 1-50 of this Complaint as if fully set forth herein.

52. This conduct constitutes the making false or misleading statements under the California FAL [Cal. Bus. and Prof. Code §§ 17500; 17535].

COMPLAINT [CLASS ACTION] - 12

**TENTH CLAIM FOR RELIEF [FARNSWORTH, BENSON, HMNY]**

**(Inducement To Breach MOVIEPASS Contracts)**

53. Plaintiffs incorporate by reference and hereby re-allege the allegations of paragraphs 1-52 of this Complaint as if fully set forth herein.

54. This conduct constitutes inducement to MOVIEPASS to breach its contracts with its consumers.

**ELEVENTH CLAIM FOR RELIEF [FARNSWORTH, BENSON, HMNY, MOVIEPASS]**

**(UCL) (CA plaintiffs only)**

55. Plaintiffs incorporate by reference and hereby re-allege the allegations of paragraphs 1-54 of this Complaint as if fully set forth herein.

56. This conduct is unlawful, fraudulent and unfair under the California Unfair Competition law [Cal. Bus. and Prof. Code §§ 17200; 17204].

**TWELFTH CLAIM FOR RELIEF [FARNSWORTH, BENSON, LOWE, HMNY]**

**(RICO)**

57. Plaintiffs incorporate by reference and hereby re-allege the allegations of paragraphs 1-56 of this Complaint as if fully set forth herein.

58. Persons who took actions that are culpable, identified above, are HMNY itself, FARNSWORTH, BENSON, AND LOWE. The enterprise is an association in fact organized to determine how to operate MOVIEPASS, within the otherwise legitimate business entities, HMNY and MOVIEPASS.

59. Alternatively, persons who took actions that are culpable, identified above, are HMNY itself, FARNSWORTH and BENSON. The enterprise is the MOVIEPASS operation itself, otherwise operating as a legitimate business entity.

60. As alleged above, Defendants have pursued this enterprise by committing two or more acts of wire fraud via email correspondence to MOVIEPASS consumers.

**DEMAND FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against all Defendants that:

A. Defendants be preliminarily and permanently enjoined from committing the acts alleged herein as well as be declared in violation of each of these laws;

B. Defendants be ordered to pay Plaintiffs' actual, consequential, incidental and special damages;

C. Defendants be ordered to pay nominal damages;

D. Defendants be ordered to provide restitution to Plaintiffs;

E. Defendants be ordered to pay Plaintiffs' attorneys' fees and costs to the extent available under the statutes sued hereunder;

F. Defendants be ordered to pay civil penalties;

G. Defendants be ordered to pay interest;

H. Plaintiffs be awarded punitive and/or exemplary damages; and

I. Plaintiffs be awarded such other and further relief as the Court deems just and proper.

///

///

///

///

**JURY DEMAND**

61. Plaintiffs respectfully requests a jury trial on all issues triable thereby.

Dated this 20th of November, 2018.

/s/ David M. Rosenberg-Wohl
David M. Rosenberg-Wohl
HERSHENSON ROSENBERG-WOHL
A PROFESSIONAL CORPORATION

COMPLAINT [CLASS ACTION] - 15