UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACKIE TABAS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>MOVIEPASS, INC., et al.,<br><br>Defendants. | Case No. 18-cv-07087-DMR<br><br>**ORDER ON DEFENDANTS' MOTION TO COMPEL ABITRATION AND PLAINTIFFS' MOTION TO AMEND**<br><br>Re: Dkt. Nos. 33, 49 |

Defendants MoviePass, Inc. ("MoviePass") and Helios and Matheson Analytics ("Helios") move to compel arbitration and to stay the case pending completion of arbitration. [Docket No. 33 (Mot.) 1, Docket No. 38 (Reply).] The court held a hearing on this motion on April 25, 2019. On May 9, 2019, Plaintiffs filed a motion to amend the complaint, which the court took under submission without oral argument at the request of the parties. [Docket Nos. 49 (MTA), 54.] For the following reasons, the motions to compel arbitration and to amend the complaint are granted. The motion to stay is denied.

## I. BACKGROUND

### A. Procedural History

Plaintiffs Jackie Tabas and Katherine Rosenberg-Wohl filed this putative class action on November 11, 2018, naming Defendants MoviePass and Helios, as well as individual defendants Ted Farnsworth, Stuart Benson, and Mitch Lowe. [Docket No. 1.] On February 14, 2019, Rosenberg-Wohl dismissed her claims against all Defendants with prejudice. [Docket No. 26.] On February 15, 2019,[1] Plaintiffs filed their first amended complaint, adding Linda Hobbs, Tim Samartino, Barbara Sjodahl, Patricia Dawn Walker, and Cheryl Whelan as named plaintiffs.

---

[1] Although Plaintiffs' "Corrected Amended Complaint" appears on the docket with a filing date of February 27, 2019, the clerk's notice dated February 19, 2019 (Docket No. 28) clarifies that the filing date of the FAC is deemed to be February 15, 2019.

[Docket No. 30 (FAC).] The FAC names only MoviePass and Helios as Defendants. *Id.*

Following the hearing on Defendants' motion to compel arbitration, Plaintiffs filed a motion for leave to file a second amended complaint. The proposed second amended complaint adds Amy Buckley as a named plaintiff. MTA at 2.

### B. Plaintiffs' Allegations

MoviePass sells subscriptions to see movies in movie theaters. FAC ¶ 5. Subscribers choose a movie from the MoviePass mobile app and then use the MoviePass card to pay for the movie. *Id.* From its formation in 2011, MoviePass has used several different pricing structures, ranging in length from monthly or quarterly to annually, and in frequency from two to three movies a month to an "unlimited" plan. *Id.* ¶ 7. In 2018, MoviePass offered an annual subscription for $89.95 featuring an "unlimited" plan that allowed customers to see one movie per day. *Id.*

On August 15, 2017, Helios, a data analytics firm, purchased a majority interest in MoviePass and eventually increased its ownership interest in the company to 91.8%, allegedly to obtain the watching habits of consumers using the service. *Id.* ¶ 8. According to Plaintiffs, Helios sustained large financial losses as a result of its investment in MoviePass. *Id.* ¶ 10. Following an investor class action lawsuit and investigation by the New York attorney general in 2018, Helios announced its intention to spin off MoviePass. *Id.* ¶ 11.

Plaintiffs allege that Helios "took steps to protect itself at the expense of" MoviePass subscribers. FAC ¶ 13. From the time it acquired majority ownership of MoviePass, Helios allegedly instructed the subscription service to "make promises too vague to be enforceable contracts, and breach[] promises it was obliged to honor." *Id.* It also allegedly directed MoviePass to breach its contracts with subscribers and make false representations to customers. *Id.* Plaintiffs contend that, at least as of mid-July 2018, Helios directed MoviePass to break contracts with consumers by removing the most desirable movies from the service. *Id.* ¶ 14. Helios allegedly told MoviePass to cancel one-year subscription plans. *Id.* ¶ 15. While some consumers were offered a refund for the remainder of the year, Defendants gave those consumers only one week to accept, and if the consumers opted out, they were precluded from signing up for the service for nine months. *Id.* Plaintiffs claim that MoviePass, under the direction of Helios, purported to offer consumers "the

2

choice of movies they wanted to see," but continually pulled specific movies and theaters from the list of availability. FAC ¶ 17.

Helios also allegedly made it "virtually impossible" for consumers to resolve any concerns. *Id.* ¶ 18. Responses to email inquiries consisted only of boilerplate language. *Id.* MoviePass also "fails to make itself available by any means to resolve consumer complaints and either ignores them or waits some time before responding, at which point the response is generic[,] saying nothing responsive to the particular complaint at hand and giving no hint as to what a consumer should do next to resolve the issue." *Id.*

According to Plaintiffs, MoviePass introduced an arbitration clause into its terms of use ("TOU") around October 30, 2017. FAC ¶ 19. Since that time, MoviePass has created numerous versions of its TOU, many of which have allegedly affected the language in the arbitration clauses. *Id.* Plaintiffs state that MoviePass never notified consumers about the introduction of the arbitration clause, even though it has emphasized other changes to the TOU in its emails to consumers. *Id.* ¶ 20. Plaintiffs also claim that MoviePass removes previous versions of the TOU from its website and refuses to provide them upon request, and instead presents only the current TOU with its updated language. *Id.* ¶ 20. According to Plaintiffs, MoviePass represents that the arbitration clause included in its July 2018 TOU retroactively applies to all enrollments before December 6, 2018. *Id.* Plaintiffs assert that these practices have made it difficult for a consumer to determine "which arbitration clause within which contract is supposed to apply," and that even if consumers read the arbitration agreement "they will not know what to do with it and certainly will not use it." *Id.*

Against MoviePass, Plaintiffs allege common law claims for breach of contract, unjust enrichment, and quantum meruit, as well as violations of California and New York consumer protection law. *Id.* ¶ 35-61, 66-67. Against Helios, Plaintiffs allege claims for inducement to breach MoviePass contracts and violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). *Id.* ¶ 62-63, 68-71. Against both Defendants, Plaintiffs allege a claim under California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq*. *Id.* ¶ 64-65.

### C. The Terms of Use Agreements

All Plaintiffs except for Hobbs accepted the MoviePass TOU on the MoviePass website

through a similar process where the website indicated that "[b]y clicking 'Start Free Trial' you agree to the Terms & Conditions." Adarkwah Decl. ¶¶ 5-7, 17, 21, 25, 29; *Id.*, Ex. C. Subscribers could access a copy of the entire TOU by clicking a link over the "Start Free Trial" button. Adarkwah Decl., Ex. C. Hobbs activated her subscription online through a redemption code she purchased from Costco. She indicated her acceptance of the TOU by checking a box that read "I agree with the MoviePass terms of service, including auto-renewal at the end of my subscription unless I choose to cancel" and then clicking a box labeled "REDEEM MY COUPON". Adarkwah Decl. ¶ 12; *Id.*, Ex. J. A copy of the TOU was viewable by clicking a link that appeared under the box. Adarkwah Decl. ¶ 12.

Since October 30, 2017, MoviePass has updated its TOU at least six times. *See* Adarkwah Decl., Exs. A, E, F, G, H, I. Tabas and Hobbs originally accepted the October 30, 2017 version of the TOU. *See* Adarkwah Decl. ¶ 3, 11; *Id.*, Ex. A. Walker originally accepted the TOU modified on January 26, 2018. *See* Adarkwah Decl. ¶ 24; *Id.*, Ex. E. Samartino, Sjodahl, and Whelan originally accepted the TOU modified on March 8, 2018. *See* Adarkwah Decl. ¶ 16, 20, 28; *Id.*, Ex. F.

Each version of the TOU contains a clause with identical language[2] stating that continued use of the MoviePass site and service manifests acceptance and agreement to any changes to the TOU made by MoviePass, even if the changes are unilateral and without notice:

> MoviePass reserves the right, at its sole discretion, to change, modify, add or remove portions of these Terms of Use, at any time, without prior notice. **IT IS YOUR RESPONSIBILITY TO CHECK THESE TERMS OF USE, AND THE MOVIEPASS APP PERIODICALLY FOR CHANGES. YOUR CONTINUED USE OF THE SERVICE AND THE SITE FOLLOWING THE POSTING OF CHANGES WILL MEAN THAT YOU ACCEPT AND AGREE TO THE CHANGES.**

Adarkwah Decl., Exs. A ¶ 1.5, E ¶ 1.5, F ¶ 1.5, G ¶ 1.5, H ¶ 1.6, I ¶ 1.6.

Defendants assert that this clause means that the Plaintiffs accepted and reaffirmed the TOU and arbitration clause each time a new agreement came out by continuing to use the service. Mot. at 12. Plaintiffs appear to dispute this and suggest that the relevant contracts are the ones they

---

[2] All versions include identical language. Each version also includes bolded print as indicated, except for the October 2017 version.

4

actually accepted at the time they signed up for the MoviePass service. [Docket No. 37 (Opp.) at 2-3.] The court need not adjudicate this particular issue for purposes of this order. Instead, it assumes without deciding that Plaintiffs accepted only the TOUs that were in place at the time they signed up for the MoviePass service, rather than the most recent TOU.

**D.     Arbitration Clauses**

Each TOU contains an arbitration clause. The October 2017 version of the TOU requires that the parties arbitrate disputes that arise out of the relationship between the consumer and MoviePass:

> You and we agree that any dispute, claim or controversy arising out of or relating to: (a) these Terms of Use or the existence, breach, termination, enforcement, interpretation or validity thereof; or (b) your access to or use of our Site at any time, whether before or after the date you agreed to these Terms of Use, will be settled by binding arbitration between you and us, and not in a court of law, with the exception of either party seeking injunctive or equitable relief as specified below.

Adarkwah Decl., Ex. A. ¶ 35.

Subsequent versions of the TOU state that either the consumer or MoviePass may elect to arbitrate certain disputes arising out of the relationship between the consumer and MoviePass:

> Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute, between you and us or our employees, agents, successors or assigns, which arises out of or relates to (a) these Terms of Use or the existence, breach, termination, enforcement, interpretation or validity thereof; (b) your access to or use of our Site at any time, whether before or after the date you agreed to these Terms of Use ; or (c) any resulting transaction or relationship (including any such relationship with third parties who do not agree to these Terms of Use) **SHALL, AT YOUR OR OUR ELECTION, BE RESOLVED BY NEUTRAL, BINDING ARBITRATION AND NOT BY A COURT ACTION.**

*Id.*, Exs. E ¶ 17, F ¶ 17, G ¶ 17, H ¶ 17, I ¶ 17.

All versions of the TOU contain identical language in their last clause under the heading "Jurisdiction for Dispute Proceedings":

> For purposes of seeking injunctive or equitable relief or in the event the Arbitration provision above is found unenforceable, any legal suit other than a suit in small claims court, action or proceeding arising out of, or related to, these Terms of Use or the Website shall be instituted exclusively in the federal or state courts located in the State of New York in each case located in the City of New York and County of New York. You waive any and all objections to the exercise of jurisdiction over you by such courts and

5

to venue in such courts.

*Id.*, Exs. A ¶ 36, E ¶ 18, F ¶ 18, G ¶ 18, H ¶ 18, I ¶ 18.

Based on these provisions, Defendants now move to compel arbitration of all claims asserted by Plaintiffs.

## II.  LEGAL STANDARDS GOVERNING ENFORCEMENT OF ARBITRATION AGREEMENTS

The Federal Arbitration Act ("FAA") governs written arbitration agreements affecting interstate commerce. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111-12 (2001). Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Enacted for the purpose of enforcing written arbitration agreements according to their own terms, the FAA embodies "the basic precept that arbitration 'is a matter of consent, not coercion.'" *Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 681 (2010) (quoting *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)). "Whether enforcing an agreement to arbitrate or construing an arbitration clause, courts and arbitrators must 'give effect to the contractual rights and expectations of the parties.'" *Id.* at 682 (quoting *Volt*, 489 U.S. at 479). Section 4 of the FAA ensures that "private agreements to arbitrate are enforced according to their terms," *Stolt–Nielsen*, 559 U.S. at 682 (quoting *Volt*, 489 U.S. at 479), by expressly authorizing a party to an arbitration agreement to petition a United States district court for an order directing that "arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Courts apply ordinary state law principles governing the formation of contracts to evaluate such claims. *Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1072 (9th Cir. 2007), *overruling on other grounds recognized by Ferguson v. Corinthian Coll., Inc.*, 733 F.3d 928, 937 (9th Cir. 2013). Like other contracts, arbitration agreements "may be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 66 (2010) (quotation omitted).

"By its terms, the [FAA] 'leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'" *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,

6

207 F.3d 1126, 1130 (9th Cir. 2000) (quoting *Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 218 (1985)) (emphasis in original). Therefore, the court's role under the FAA is limited to determining "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp.*, 207 F.3d at 1130 (citations omitted).

## III. MOTION TO COMPEL ARBITRATION

Defendants move to compel arbitration on the basis that Plaintiffs and MoviePass[3] entered into enforceable written agreements to arbitrate all disputes. Plaintiffs respond that there was no agreement to arbitrate, and that even if there were, the agreement is illusory and unconscionable, and therefore unenforceable. Plaintiffs also request a limited trial. Although not entirely clear, Plaintiffs appear to request that the limited trial cover the issues of contract formation and enforceability. Opp. at 18.

### A. Agreement to Arbitrate

As the party moving to compel arbitration, Defendants bear "the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017) (quotation omitted). "When considering a motion to compel arbitration, a court applies a standard similar to the summary judgment standard of [Federal Rule of Civil Procedure] 56." *Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 804 (N.D. Cal. 2004) (quotation omitted). When a party opposes a motion to compel arbitration on the ground that no agreement to arbitrate was made, the court "should give to the opposing party the benefit of all reasonable doubts and inferences that may arise." *Sanford v. MemberWorks, Inc.*, 483 F.3d 956, 963 (9th Cir. 2007) (quoting *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir. 1991) (further citations and quotations omitted)); *see also Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985, 988 (N.D. Cal. 2017) (finding that, for an arbitration dispute regarding contract formation, "[t]he party opposing arbitration shall receive the benefits of all reasonable doubts and inferences".). "Only when there is no genuine issue of fact concerning the formation of the [arbitration] agreement should the court decide as a matter of law that the parties

---

[3] The parties do not dispute that Helios, as the parent company of MoviePass, is also entitled to invoke the arbitration provision. Mot. at 16-18; Opp. at 6 n. 6.

7

did or did not enter into such an agreement." *Three Valleys*, 925 F.2d at 1141 (quoting *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 (3d Cir. 1980)).

Defendants contend that each of the named Plaintiffs entered into an enforceable agreement to arbitrate all disputes relating to their use of the MoviePass service when they agreed to the TOU during the signup process. Plaintiffs raise four arguments in support of their position that they did not consent to arbitrate their present claims. First, they assert that the parties did not form a contract to arbitrate because there was no meeting of the minds about arbitration. Opp. at 12. Second, Plaintiffs argue that most class members do not have a contract with an arbitration clause. *Id.* at 8. Third, Plaintiffs contend that the arbitration clause does not apply to the equitable claims raised in the operative complaint. *Id.* Finally, Plaintiffs argue that the language of the arbitration clauses provides that Plaintiffs have the option to arbitrate, but not the obligation to do so. *Id.* at 9.

### 1. Contract Formation

Plaintiffs first argue that they did not consent to arbitrate their present claims. At the hearing, Plaintiffs clarified that they are disputing whether a valid contract was ever formed. To decide an issue of contract formation with respect to arbitration agreements, "courts generally . . . should apply ordinary state-law principles." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *see also Cordas*, 228 F. Supp. 3d at 988 ("Questions of contract formation are questions of state law.").

Under California law,[4] a valid contract requires four essential elements: (1) "[p]arties capable of contracting"; (2) "[t]heir consent"; (3) "[a] lawful object"; and (4) "[a] sufficient cause or consideration." Cal. Civ. Code § 1550. "[M]utual assent is a required element of contract formation" and "[c]ourts must determine whether the outward manifestations of consent would lead a reasonable person to believe the offeree has assented to the agreement." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014). "A party who is bound by a contract is bound by all

---

[4] For contract formation issues brought before a federal court in California, "[i]n the absence of any real dispute, . . . the choice-of-law rules of the forum state, California, will apply." *Fields v. Wise Media LLC*, No. 12-cv-05160-WHA, 2013 WL 12174296, at *3 (N.D. Cal. Jan. 25, 2013). Defendants state that California law governs issues of contract formation, and Plaintiffs do not dispute this point. Mot. at 10, fn. 5. Therefore, the court will look to California law in analyzing whether a valid contract exists in this case.

8

its terms, whether or not the party was aware of them." *Norcia*, 845 F.3d at 1284. Similarly, "[a] party cannot avoid the terms of a contract on the ground that he or she failed to read it before signing." *Id.* (quoting *Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*, 89 Cal. App. 4th 1042, 1049 (2001)). "[T]he enforceability of a web-based agreement" like the one at issue "is clearly a fact-intensive inquiry." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 76 (2d Cir. 2017) (applying California law).

Plaintiffs contend that they never consented to arbitration because MoviePass reserved the right to unilaterally change its TOU, including its arbitration clause. Opp. at 4, 11. They argue that there was no meeting of the minds because MoviePass could modify the arbitration clause at its sole discretion, retroactively and without notice. *Id.* at 12. While these facts may be relevant to whether Plaintiffs' contracts are enforceable,[5] they are not relevant to the question of contract formation in this case. As stated above, in analyzing this motion the court proceeds under Plaintiffs' assumption that they accepted only the TOUs that were in place at the time they each signed up for the MoviePass service, rather than any subsequent TOU. Therefore, Plaintiffs' contentions about MoviePass's ability to unilaterally modify the arbitration clause are immaterial to whether the parties formed a valid contract. It is undisputed that each named plaintiff indicated his or her consent to the TOU in the process of signing up for the MoviePass service. It is also undisputed that each TOU contains an arbitration clause, and that the relevant arbitration clauses are substantially similar. Plaintiffs have not raised any disputed facts about whether they accepted the TOU at the time they signed up for the service.

Therefore, the court finds that Plaintiffs manifested consent to the terms of the TOU when they each signed up for the MoviePass service. Since Plaintiffs have not identified any disputed facts regarding contract formation, their request for a limited trial on this issue is denied.

### 2. Unnamed Class Members

Plaintiffs next assert that many putative class members entered into contracts with MoviePass that do not contain an arbitration clause. They point out that the arbitration clause did

---

[5] As discussed below, Plaintiffs concede that issues regarding enforceability of the contract have been delegated to the arbitrator and so the court does not reach that question here.

9

not become part of MoviePass's TOU until October 30, 2017, more than five years after MoviePass first began operating. Therefore, Plaintiffs argue, there are likely numerous putative class members who did not accept a TOU with an arbitration clause. Opp. at 8. Although not clear or explicit, Plaintiffs appear to argue that because some of the putative class members did not consent to arbitrate, the entire class cannot be compelled to arbitration.

In response, Defendants correctly point out that all named plaintiffs signed up for the MoviePass service after introduction of the arbitration clause into the TOU. Reply at 1-2. Each TOU accepted by the named plaintiffs includes an arbitration clause. Adarkwah Decl., Exs. A ¶ 35, E ¶ 17, F ¶ 17. The most recent TOU, issued in December 2018, likewise contains an arbitration clause. *Id.*, Ex. I ¶ 17. Defendants argue that the contracts of putative class members are irrelevant until a class is certified. Reply at 1-2. They contend that the court should only look at the contracts of the named plaintiffs when deciding whether to compel arbitration as to those individuals.

At the hearing, Plaintiffs conceded that the court may only analyze the claims of parties who are presently before the court. In this case, as no class has yet been certified, only the named plaintiffs are parties to the current action. *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-md-1827-SI, 2011 WL 1753784, at *4 (N.D. Cal. May 9, 2011) ("[P]utative class members are not parties to an action prior to class certification.") (quoting *Saleh v. Titan Corp.*, 353 F. Supp. 2d 1087, 1091 (S.D. Cal. 2004)). Accordingly, the only relevant contracts at issue are the contracts between Defendants and the individual named plaintiffs, each of which contains an arbitration clause.

### 3. Scope of Arbitration Agreement

Plaintiffs argue that the arbitration clauses in the respective TOUs do not apply to equitable claims. They assert that twelve of the thirteen claims for relief have a "basis in equitable restitution" and therefore are exempt from the arbitration clause.[6] Opp. at 8. Plaintiffs rely on language in the TOUs indicating that actions seeking injunctive or equitable relief shall be brought in state or federal

---

[6] Plaintiffs admit that the first claim for relief, a claim for breach of contract (generally) against MoviePass, seeks damages rather than equitable relief. *Id.* Defendants disagree that twelve of Plaintiffs' thirteen claims are based in equity; that disagreement need not be resolved here because the court concludes that equitable claims are not exempt from arbitration under the TOUs.

10

court in New York. The October 2017 TOU provides, under the paragraph labeled "Arbitration":

> You and we agree that any dispute, claim or controversy . . . will be settled by binding arbitration between you and us, and not in a court of law, with the exception of either party seeking injunctive or equitable relief as specified below.

Adarkwah Decl., Ex. A ¶ 35. The next paragraph, labeled "Jurisdiction for Dispute Proceedings," explains the injunctive or equitable relief exception in more detail:

> For purposes of seeking injunctive or equitable relief or in the event the Arbitration provision above is found unenforceable, any legal suit, action or proceeding arising out of, or related to, these Terms of Use or the Website shall be instituted exclusively in the federal or state courts located in the State of New York in each case located in the City of New York and County of New York.

*Id.*, Ex. A ¶ 36. The January 2018, March 2018, and December 2018 TOUs contains a similar jurisdictional paragraph, except that those agreements add the language "any legal suit other than a suit in small claims court," and do not contain a reference to equitable relief within the arbitration clause itself. *Id.*, Exs. E ¶ 18, F ¶ 18, I ¶ 18.

For their part, Defendants assert that the language relied upon by Plaintiffs is not in the arbitration clause itself but in a separate paragraph relating to the TOUs' jurisdiction and venue provisions.[7] Reply at 2. They argue that such language is "often used in arbitration provisions to provide for a right to seek enforceable relief in courts, including to compel arbitration, and to supplement what is available in the arbitration." *Id.* They further contend that the sole purpose of this language is to allow MoviePass "to seek a temporary restraining order or preliminary injunction from a federal or state court in New York to secure its rights to arbitrate under the TOU." *Id.* at 3.

The Ninth Circuit's decision in *Comedy Club* is directly on point. In that case, the court considered an arbitration clause that contained the following language:

> All disputes relating to or arising under this Agreement . . . shall be resolved by arbitration . . . in accordance with the commercial arbitration rules of the American Arbitration Association. . . . Notwithstanding this agreement to

---

[7] This contention is not accurate. As noted above, the December 2017 TOU does contain a reference to "injunctive or equitable relief" in the paragraph containing the arbitration clause. Adarkwah Decl., Ex. A ¶ 35.

11

> arbitrate, the parties, in addition to arbitration, shall be entitled to pursue equitable remedies and agree that the state and federal courts shall have exclusive jurisdiction for such purpose and for the purpose of compelling arbitration and/or enforcing any arbitration award.

*Comedy Club, Inc.*, 553 F.3d at 1281–82. In *Comedy Club*, the plaintiff argued that the arbitrator lacked authority to arbitrate equitable claims because the arbitration clause vested "exclusive jurisdiction" of those claims in state and federal courts. *Id.* at 1284. The defendant contended that the language was intended to carve out equitable claims "in aid of arbitration," such as issuing injunctive relief to maintain the status quo between parties pending arbitration. *Id.* at 1285. The Ninth Circuit determined that both interpretations were plausible, but ultimately applied the federal presumption in favor of arbitration to find that the clause mandated arbitration for both equitable and legal disputes. *Id.* at 1286. It reconciled the seemingly contradictory language by finding that the clause was intended to "give a court the authority to issue equitable remedies, such as a temporary restraining order," which is otherwise not allowed under the FAA. *Id.* ("[I]t makes sense that if the parties wanted to give themselves the ability to seek temporary equitable remedies in courts while arbitration was ongoing, they would add such a clause to the arbitration agreement.")

As in *Comedy Club,* the parties' agreements in this case provide that courts, and not arbitrators, will have exclusive jurisdiction over claims seeking equitable remedies and injunctive relief. This language could be read, as Plaintiffs argue, to mean that equitable claims cannot be compelled to arbitration. However, *Comedy Club* found similar language to be ambiguous and resolved the dispute in favor of arbitration. In fact, the clause in dispute in this case is even less amenable to Plaintiffs' interpretation than the clause examined in *Comedy Club*. In *Comedy Club*, the disputed clause was explicitly part of the arbitration clause. Here, only the December 2017 TOU contains any language about an exception for injunctive or equitable relief within the arbitration clause itself, and the disputed language in the other TOUs occurs in a separate paragraph on jurisdiction. Even the equitable claims language in the December 2017 TOU merely references a jurisdictional provision in a different section of the agreement. If the parties intended to carve out equitable claims, they could have done so more clearly by including an exception within the arbitration clause itself. *See AbbVie Inc. v. Novartis Vaccines & Diagnostics, Inc.*, No. 17-cv-

01815-EMC, 2017 WL 3835340, at *5 (N.D. Cal. Aug. 31, 2017) (determining that a provision that was not a part of the arbitration clause was not meant to create an exception to the arbitration clause).

Although the language at issue may be susceptible to Plaintiffs' interpretation, it is at least as ambiguous as the clause examined in *Comedy Club*. As this court is bound by that case, the ambiguity must be resolved in favor of arbitration.[8] *Comedy Club*, 553 F.3d at 1286; *accord McKesson Corp. v. Health Robotics, S.R.L.*, No. 11-cv-00728-JCS, 2011 WL 3157044, at *2 (N.D. Cal. July 26, 2011) (finding the plaintiff's equitable claims were subject to arbitration where the arbitration clause provided that "[n]otwithstanding the [arbitration agreement], either PARTY may elect to seek injunctive relief or other equitable remedies against the other PARTY from any court of competent jurisdiction").

Accordingly, the court concludes that the arbitration clauses in Plaintiffs' TOUs do not exempt all equitable claims from arbitration.

### 4. Choice Versus Obligation

Plaintiffs argue that the language of the arbitration clauses gives Plaintiffs "the choice of arbitrating, not the obligation." Opp. at 9. They point to language from the January 2018 TOU, which applies to Walker. That language states: "EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL." Adarkwah Decl., Ex. E ¶ 17. Further down in that agreement, it also states that "[a]ny claim or dispute . . . **SHALL, AT YOUR OR OUR ELECTION, BE RESOLVED BY NEUTRAL, BINDING ARBITRATION AND NOT BY A COURT ACTION**." *Id.* (emphasis in original). The March 2018 TOU, applicable to Samartino, Sjodahl, and Whelan, contains identical language. *Id.*, Ex. F ¶ 17. The October 2017 TOU, agreed to by Tabas and Hobbs, contains different language that states: "You and we agree that any dispute . . . will be settled by binding arbitration between you and us, and not in a court of law." Adarkwah Decl., Ex. A ¶ 35.

---

[8] At the hearing, Plaintiffs argued that the Supreme Court's recent decision in *Lamps Plus v. Varela*, 139 S.Ct. 1407 (2019) overruled *Comedy Club* to the extent that *Comedy Club* applied a presumption in favor of arbitration where an arbitration clause is ambiguous. Plaintiffs' argument appears to be that *Lamps Plus* rejects the use of any presumptions (whether arising under contract law or the FAA) in examining arbitration clauses. *Lamps Plus* cannot be read for such a broad proposition.

At the hearing, Plaintiffs argued that these paragraphs establish that they have the right to choose the forum in which they bring their claims. They contend that Defendants' attempt to bring their claims to arbitration undermines their choice and cuts against the common-sense interpretation of the clauses cited above. Plaintiffs argue that these clauses essentially establish a "first come, first served" approach, where the party bringing the claims is the party whose choice should be enforced. They also cite *Lamps Plus* again for the proposition that if the language in an arbitration agreement is ambiguous, the court may not resolve that ambiguity in favor of arbitration. Defendants respond that these provisions unambiguously establish that either party may unilaterally submit the matter to arbitration, regardless of which party initially files the case.

The court is hard-pressed to find support in the language of the provision for Plaintiffs' "first come, first served" interpretation. Indeed, numerous courts have enforced arbitration agreements against a plaintiff (who, by definition, sues first) where the arbitration clause contained language providing that either side could choose to arbitrate their claims. *See, e.g.*, *Grear v. Comcast Corp.*, No. 14-cv-05333-JSW, 2015 WL 926576, at *1 (N.D. Cal. Mar. 3, 2015) (enforcing an arbitration agreement where either party could "elect to arbitrate [a] Dispute in accordance with the terms of this Arbitration Provision"); *Dean v. Ad Astra Recovery Servs., Inc.*, No. 16-cv-03817-RGK, 2016 WL 10968663, at *1 (C.D. Cal. Sept. 14, 2016) (compelling arbitration where either party could elect to arbitrate any claims arising under the disputed agreement); *Trout v. Comcast Cable Commc'ns, LLC*, No. 17-cv-01912-RS, 2018 WL 4638705, at *2 (N.D. Cal. Mar. 15, 2018) (enforcing arbitration clause where either party could "elect to arbitrate [a] Dispute in accordance with the terms of this Arbitration Provision"). In accordance with this body of similar cases, the court declines to adopt Plaintiffs' interpretation.

In sum, the court concludes that a valid agreement to arbitrate exists in each of the contracts applicable to the named plaintiffs.

**B.  Enforceability**

Plaintiffs argue that the arbitration agreements are unenforceable because the arbitration remedy is illusory and because the agreements are unconscionable. Defendants contend that these defenses are questions of arbitrability that the parties agreed to submit to the arbitrator. Generally,

14

"a gateway dispute about whether the parties are bound by a given arbitration clause raises a 'question of arbitrability' for a court to decide." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 946 (1995)). However, "parties may delegate the adjudication of gateway issues to the arbitrator if they 'clearly and unmistakably' agree to do so." *Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.*, 862 F.3d 981, 985 (9th Cir. 2017), *as amended* (Aug. 28, 2017) (quoting *Howsam*, 537 U.S. at 83-84).

At the hearing, Plaintiffs conceded that the arbitration agreements at issue delegate questions of arbitrability to an arbitrator. Accordingly, the court concludes that all the contracts applicable to the named plaintiffs delegate the issue of arbitrability to an arbitrator, and it is the arbitrator who must rule on Plaintiffs' defenses to the arbitration clause.

## IV. MOTION TO AMEND

On May 9, 2019, subsequent to the hearing on Defendants' motion to compel arbitration, Plaintiffs filed a motion to amend the FAC to add named plaintiff Amy Buckley, who signed up for the MoviePass service prior to the introduction of the arbitration clause into MoviePass's TOU in October 2017. [Docket No. 49.] Defendants filed an opposition. [Docket No. 53.] The parties filed a stipulation that the motion be decided without a hearing, which the court granted. [Docket Nos. 52, 54.]

Under Federal Rule of Civil Procedure 15(a), leave to amend should be granted as a matter of course, at least until the defendant files a responsive pleading. Fed. R. Civ. P. 15(a)(1). After that point, Rule 15(a) provides generally that leave to amend the pleadings before trial should be given "freely . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). "This policy is to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc*., 316 F.3d 1048, 1051 (9th Cir. 2003) (quotation omitted). In the absence of an "apparent" reason, such as undue delay, bad faith or dilatory motive, prejudice to the opposing party, futility of the amendments, or repeated failure to cure deficiencies in the complaint by prior amendment, it is an abuse of discretion for a district court to refuse to grant leave to amend a complaint. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Lockheed Martin Corp. v. Network Sols., Inc*., 194 F.3d 980, 986 (9th Cir. 1999). These factors do not "merit equal weight," and "it is the consideration of prejudice to the opposing party that carries

the greatest weight." *Eminence Capital*, 316 F.3d at 1052. "Granting leave to amend does not necessarily mean that the underlying allegations ultimately have merit." *FlatWorld Interactives LLC v. Apple Inc.*, 12-cv-01956-WHO, 2013 WL 6406437, at *3 (N.D. Cal. Dec. 6, 2013). "Rather, '[a]bsent prejudice, or a strong showing of any of the remaining [ ] factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend.'" *Id.* (quoting *Eminence Capital*, 316 F.3d at 1052).

Plaintiffs argue that the liberal policy in favor of amendment should be applied here because the proposed amendment is of "direct relevance to the pending motion to compel arbitration." [Docket No. 49 at 3.] This statement is in reference to a discussion at the hearing on the motion to compel arbitration, discussed above, where Plaintiffs conceded that the court may only decide matters relating to parties who are actually before the court and not for putative class members before a class has been certified.

Defendants oppose the motion to amend primarily on the basis that Plaintiffs unduly delayed filing its motion. Docket No. 53 at 3 (citing *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 538 (9th Cir. 1989)). They argue that Tabas was "advised of the grounds for Defendants' Motion to Compel Arbitration in early February 2019," which was before Tabas filed the FAC adding five additional MoviePass subscribers as additional plaintiffs. *Id.* at 4. They argue that Plaintiffs had ample time to find other subscribers "who had originally agreed to earlier versions of the TOU that do not include arbitration provisions." *Id.* at 4. They contend that Plaintiffs have not adequately justified such a delay, and that granting leave to amend "would endorse a revolving door theory of litigation where a lawsuit stays alive until a plaintiff can be found to pursue it." *Id.* at 3-4.

Plaintiffs did not unjustifiably delay in filing the motion to amend. The case was filed in November 2018 and is still in early proceedings. Even if Plaintiffs were "advised of the grounds" for the motion to compel arbitration in February 2019, that motion had not yet been briefed or heard.

Defendants also argue that the motion to amend may impermissibly delay a decision on their motion to compel arbitration. That concern is moot as the court determined that the issues would be addressed together in this order. Further, the delay caused by consideration of the motion to amend was not substantial, particularly as the case is still in early proceedings.

1  Accordingly, the court grants Plaintiffs' motion to amend to add Buckley as a named plaintiff in this action.

## V. STAY OF ACTION

Defendants request that this matter be stayed pending the conclusion of arbitration. Mot. at 18. As the court is granting Plaintiffs' motion to amend to add Buckley as a named plaintiff representing a putative class who signed up for MoviePass subscription before an arbitration clause was introduced in MoviePass's TOU, there is no reason to stay the case as to Buckley's claims. The claims of the other named plaintiffs are submitted to arbitration, and their individual claims are stayed. The case will proceed with Buckley as the named plaintiff representing the putative class.

## VI. CONCLUSION

For the foregoing reasons, Defendants' motion to compel arbitration is granted as to Tabas, Hobbs, Samartino, Sjodahl, Walker, and Whelan. Only the claims of those six Plaintiffs are stayed pending arbitration. Defendants' request to stay the action is denied. Plaintiffs' request for a limited trial on contract formation and enforceability is denied.

Plaintiffs' motion to amend to add Buckley as a named plaintiff is granted. The proposed second amended complaint attached to the Declaration of David Rosenberg-Wohl (Docket No. 49-1) is deemed the operative complaint as of the date of this order. Plaintiff shall file the second amended complaint, without changes, separately on the docket by August 16, 2019.

The parties shall appear for a case management conference on September 18, 2019 at 1:30 p.m. They shall file an updated joint case management conference statement by September 11, 2019.

**IT IS SO ORDERED.**

Dated: August 13, 2019



Judge Donna M. Ryu
United States Magistrate Judge